IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTIAN KREMPASKY,** | : | CIVIL ACTION NO. 3:19-CV-1116 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA GAMING CONTROL BOARD,** | : | |
| | : | |
| **Defendant** | : | |

## **MEMORANDUM**

Plaintiff Christian Krempasky advances claims for age discrimination in employment pursuant to state and federal law against the defendant, the Pennsylvania Gaming Control Board ("PGCB"). The PGCB moves for summary judgment on both of Krempasky's claims pursuant to Federal Rule of Civil Procedure 56. We will grant the PGCB's motion with regard to Krempasky's federal claim, and dismiss the remaining state-law claim without prejudice.

I.      **Factual Background & Procedural History**[1]

The PGCB is a state agency with authority over the conduct of gaming and related activities in the Commonwealth of Pennsylvania.  See 4 PA. CONS. STAT. § 1202.  Krempasky has been employed by the PGCB since October 2007.  (See Doc. 29 ¶ 1).  For his first three years of employment, Krempasky worked as a Casino Compliance Representative ("Compliance Representative").  (See Doc. 1 ¶ 8; Doc. 9 ¶ 8).  He then worked as an investigator for the Bureau of Investigation and Enforcement from October 2010 through February 2014 before returning to his Compliance Representative position in early 2014.  (See Doc. 1 ¶¶ 8-9; Doc. 9 ¶¶ 8-9).  Krempasky is currently 50 years old and employed as a Compliance Representative Level Two.  (See Doc. 29 ¶¶ 2, 4).

Employees of the PGCB receive an employee handbook, which contains a recitation of PGCB's Code of Ethics.  (See Doc. 29 ¶ 7; Doc. 33-2 ¶ 7; see also Doc. 27-2).  Krempasky, as an employee of the PGCB, is required to sign a Code of Ethics Statement and Disclosure Form ("Ethics Disclosure Form") each year.  (See Doc. 29 ¶ 8; Doc. 33-2 ¶ 8; see also Doc. 27-2 at 11).  The Ethics Disclosure Form affirms that

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 29, 33-2).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

the employee has received and read the PGCB's Code of Ethics; affirms that a violation of the Code could result in disciplinary action; and promises that the employee will immediately disclose any possible violation to the PGCB Executive Director, Ethics Liaison Officer, or the Board.  (See Doc. 25-3).

Krempasky did not disclose any potential ethics violations in 2008 or 2009.  (See Doc. 29 ¶ 17; Doc. 33-2 ¶ 17).  Krempasky's signed Ethics Disclosure Form for 2008 leaves blank the space where employees disclose "a possible ethical concern pursuant to the Code."  (See Doc. 25-4 at 1).  Krempasky's signed Ethics Disclosure Form for 2009 states "None" in this space.  (See Doc. 25-3 at 1).  None of Krempasky's other Ethics Disclosure Forms communicate potential ethical violations.  (See Doc. 29 ¶ 17; Doc. 33-2 ¶ 17).

In late 2017, Krempasky applied for a promotion to Casino Compliance Supervisor ("Compliance Supervisor"), and he interviewed for the position in early 2018.  (See Doc. 25-1, Krempasky Dep. 28:1-29:18).[2]  On March 12, 2018, Krempasky received a letter stating he would be promoted to a Compliance Supervisor position at the Sands Bethlehem Casino ("Sands").  (See Doc. 29 ¶ 19).  A few days later, however, an employee of Sands, Dorrine Kalinchock, expressed concerns to her employer about Krempasky working there.  (See id. ¶ 20; Doc. 33-2 ¶ 20).  The

---

[2] The complaint alleges Krempasky applied for promotions 27 times over a five-year period, and was always rejected.  (See Doc. 1 ¶¶ 12-13).  It further alleges that, since June 2018, Krempasky has been denied three additional promotions.  (See id. ¶ 21).  In briefing, however, Krempasky stipulates to limit his claims to "his denial of the [Compliance Supervisor] position in June of 2018."  (See Doc. 33 at 18).  We accordingly limit our factual recitation and analysis to the actions surrounding Krempasky's June 2018 promotion.

3

PGCB then formally investigated Kalinchock's complaint, interviewing Krempasky, Kalinchock, and others.  (See Doc. 29 ¶¶ 23, 27).

Kalinchock met Krempasky in 2007 when she worked at Mount Airy Casino ("Mount Airy") as a cocktail waitress.  (See Doc. 29 ¶ 21; Doc. 33-2 ¶ 21; Doc. 33-3 ¶ 2).  The parties agree that Krempasky and Kalinchock dated, and that the relationship ended in 2010.  (See Doc. 25-4, Kalinchock Dep. 9:18-19:7; Krempasky Dep. 73:19-22, 84:4-25, 89:8-10).  The parties dispute the exact timeline of the relationship's genesis.  The PGCB submits Kalinchock's statement that they began dating while she worked at Mount Airy, and also dated when she worked at Sands, until their breakup.  (See Doc. 29 ¶ 24; Kalinchock Dep. 23:3-24:5).  Krempasky, on the other hand, insists his relationship with Kalinchock did not begin until she left Mount Airy for non-casino employment in 2008.  (See Doc. 33-2 ¶ 24).  He does not dispute that Kalinchock worked at Sands in 2009 during the course of their relationship.  (See Doc. 29 ¶ 28; Doc. 33-2 ¶ 28; Doc. 33-3 ¶¶ 5-6; Doc. 27-11 at 2).  Krempasky did not disclose his relationship with Kalinchock during his interview for the Compliance Supervisor position in 2018.  (See Doc. 29 ¶ 29; Doc. 33-2 ¶ 29).

On June 1, 2018, the PGCB issued a letter to Krempasky to notify him of an investigation related to his "potential violation of PGCB Code of Ethics."  (See Doc. 27-13).  The letter also scheduled a predisciplinary conference for mid-June to "afford [Krempasky] an opportunity to answer the allegations."  (See id. at 1).  Krempasky attended the predisciplinary conference.  (See Doc. 29 ¶ 31; Doc. 33-2 ¶ 31).  On June 26, 2018, the PGCB formally rescinded Krempasky's promotion to Compliance Supervisor at Sands.  (See Doc. 29 ¶ 33; Doc. 33-2 ¶ 33; Doc. 27-12).  The

4

letter stated, *inter alia*, that he "did not bring up the prior relationship [with Kalinchock] during the interview process for the [Compliance Supervisor] position, which has created trust issues in you for management."  (See Doc. 27-12 at 1).

Krempasky filed the instant two-count complaint in July 2019, alleging the PGCB violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 951 *et seq*.  Krempasky seeks money damages as well as interest and costs.  The PGCB filed an answer with affirmative defenses.  After a period of discovery, the PGCB now moves for summary judgment on both of Krempasky's claims.  The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). Local Rule of Court 56.1 undergirds these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. Local Rule 56.1 further requires the nonmovant to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id.

### III.   Discussion

#### A.   ADEA Claim

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" See 29 U.S.C. § 623(a)(1). The statute defines an employer to include states and state agencies, and provides a private right of action for any person aggrieved by a violation. See id. §§ 626(c), 630(b). On the other hand, the Eleventh Amendment of the United States Constitution declares that "[t]he Judicial power of the United States shall not be

6

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Pursuant to the Eleventh Amendment, states and state agencies are generally immune from lawsuits in federal courts brought against them by citizens. See Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).

The Eleventh Amendment's broad grant of immunity from damages claims in federal court is subject to few exceptions. First, Congress can expressly abrogate state immunity, provided that Congress "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." See Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). Second, individuals can seek prospective injunctive relief against state officials. See *Ex parte* Young, 209 U.S. 123, 159-60 (1908). Finally, a state can waive its immunity. See Alden v. Maine, 527 U.S. 706, 755 (1999); see also Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 197 (3d Cir. 2008) (Pennsylvania waived Eleventh Amendment immunity by voluntarily removing ADEA case to federal court). Even if a state waives its immunity from *suit* in federal court, it may still assert immunity from *liability*. See Lombardo, 540 F.3d at 195 (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 766 (2002); Dellmuth v. Muth, 491 U.S. 223, 229 (1989); Edelman v. Jordan, 415 U.S. 651, 662-64 (1975)).

Under the abrogation exception, the Supreme Court of the United States in 2000 held that, although the ADEA is valid pursuant to the Commerce Clause, "Congress lacks power under Article I to abrogate the States' sovereign immunity."

See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 78 (2000) (citing Seminole, 517 U.S. at 72–73). Thus, the "ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid." Id. at 91. The Third Circuit Court of Appeals has cited approvingly to Kimel multiple times in the last two decades. See, e.g., Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 201-02 (3d Cir. 2000); Lombardo, 540 F.3d at 195 n.2; Shahin v. Delaware, 424 F. App'x 90, 92 (3d Cir. 2011) (nonprecedential); Youssef v. Dep't of Health & Sr. Servs., 524 F. App'x 788, 789 n.2 (3d Cir. 2013) (nonprecedential); Smith v. Sec'y of Dep't of Env't Prot., 540 F. App'x 80, 82-83 (3d Cir. 2013) (nonprecedential). Accordingly, the ADEA does not abrogate state sovereign immunity. See Kimel, 528 U.S. at 78.

In the matter *sub judice*, none of the enumerated exceptions to immunity apply. Krempasky's complaint alleges the PGCB is a "Commonwealth agency," and the PGCB admitted this fact from the outset. (See Doc. 1 ¶ 4; Doc. 9 ¶ 4). Pennsylvania "has not specifically waived immunity for ADEA violations." See Lombardo, 540 F.3d at 195 (citing 42 PA. CONS. STAT. § 8522). Nor did the PGCB remove this case from state court. (See generally Doc. 1). Furthermore, Krempasky seeks only damages, and he does not name a state official or seek injunctive relief. Cf. Young, 209 U.S. at 159-60; (see generally Doc. 1). Because the Commonwealth retains sovereign immunity unless the General Assembly specifically waives it, the PGCB can and did assert sovereign immunity here. See Lombardo, 540 F.2d at 195 (citing 1 PA. CONS. STAT. § 2310); (see also Doc. 9 at 5).

8

The PGCB is entitled to sovereign immunity from liability on Krempasky's ADEA claim as a matter of law.[3]

### B. PHRA Claim

Having determined that the PGCB is entitled to sovereign immunity on Krempasky's federal claim, the only remaining claim is that of discrimination pursuant to state law. There are certain circumstances in which a district court may decline to exercise supplemental jurisdiction, including "if—the district court has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, state claims "should be dismissed as well"). Moreover, our court of appeals directs that "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). The district court's decision to decline jurisdiction over remaining state-law claims is

---

[3] We decline Krempasky's invitation to adopt a nonbinding Southern District of Florida case finding that the ADEA properly abrogated state sovereign immunity, as both the Supreme Court and our own court of appeals reject that premise. See Kimel, 528 U.S. at 91; Lombardo, 540 F.3d at 195 n.2; (see also Doc. 33 at 7-8). Nor will we take up Krempasky's ADEA claim on the theory that Pennsylvania's passage of the PHRA indicates it has waived its sovereign immunity under the ADEA, as Krempasky cites to no Pennsylvania or Third Circuit case in support of this theory. (See Doc. 33 at 8).

discretionary.  See Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).  Indeed, the Third Circuit has explicitly recognized that, while district courts *may* continue their exercise of jurisdiction over PHRA claims in similar circumstances, they are not required to do so.  See Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 174 (3d Cir. 2009) (affirming district court's dismissal of PHRA claim without prejudice following dismissal of Title VII claims with prejudice); Garges v. People's Light & Theatre Co., 529 F. App'x 156, 163-64 (3d Cir. 2013) (nonprecedential) (same following entry of summary judgment on Title VII, Equal Pay Act, and Fair Labor Standards Act claims).  Here, no federal claims remain.  We have carefully considered the factors applicable to supplemental jurisdiction and none is compelling.  Potential concerns regarding the state administrative procedures must be addressed in some fashion.  Moreover, although the parties have concluded fact discovery, judicial economy, convenience, and fairness to the parties may all be achieved in truncated state court proceedings.  Therefore, we decline to exercise supplemental jurisdiction over Krempasky's PHRA claim.  See 28 U.S.C. § 1367(c)(3).

## IV.  Conclusion

We will grant the PGCB's motion (Doc. 24) for summary judgment on Krempasky's ADEA claim, and dismiss the PHRA claim without prejudice.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 27, 2021